BEULAH I. HURST *v.* DENLO CARL HURST.

[No. 2-1073A217. Filed October 14, 1975.]

*Louis Pearlman, Jr.,* of Lafayette, for appellant.

*Robert A. Mucker,* of Lafayette, for appellee.

WHITE, J.—The appellant Beulah Hurst (Wife) appeals from a judgment which denied her a divorce on her complaint and granted it to Denlo Hurst (Husband) on his cross-complaint. The decree awarded Wife the household goods and furniture she had inherited from her family and the sum of $13,750.00; it awarded Husband the family residence (along

with responsibility for the mortgage), the remainder of household goods and furniture, the tools and farm equipment on such residence, and custody of the couple's minor child. No order of support was made. In this appeal Wife contends that the court committed error both in the property settlement and the award of custody.

We affirm.

The evidence shows that the couple was married in 1942 and had five children, four of whom were emancipated at the time of trial. They lived in various places until 1954, at which time they purchased a house and slightly over 19 acres of land from Wife's mother, property they had rented from 1948 to 1952. It was not modern (no central heating, no indoor plumbing) when purchased, but they had plumbing installed before moving into it and made numerous other improvements while living there. In 1963 they built a new house on the 19 acres and moved into it. (The old house and a small bit of ground were sold to their oldest daughter and her husband; another daughter and her husband were given two lots and they built a house thereon.) The property had an appraised value of $35,000.00 and was mortgaged, the mortgage balance at the time of trial being $7,569.92.

Wife first filed for divorce in 1968, but that action was abandoned. Both parties continued to reside in the house, but Wife moved into a separate bedroom and the parties ceased living as man and wife.

The evidence most favorable to Husband shows that in 1965 Wife, over Husband's objections, began working outside the home. From 1965 until 1968 she worked the 4:00 P.M. to midnight shift in a nearby factory, often going out after work with her fellow employees. During this period Husband, who worked the day shift in a different factory, prepared dinner for and otherwise took care of the children. After that job she worked at two temporary jobs, then

worked for two years on the midnight to eight shift in an all night restaurant. When asked by her attorney what she had done with her earnings Wife answered, "Well, I bought a car, and I bought clothes. I would buy things for [the youngest child], for the house." About a year before filing this action she stopped working at a regular job, although she did babysitting outside the home, including overnight and in at least one instance most of a week. At the time of the trial she was living in with and looking after an elderly couple who paid her $15.00 per week, and also doing baby-sitting to bring her weekly cash income to about $45.00.

The evidence further shows that even prior to the time she began to work outside the house the wife was an extraordinarily bad housekeeper herself and that she would interfere with the housecleaning efforts of other family members. The house was so dirty and filled with trash, trash that Wife would bring back in if thrown out, that one or more rooms were unusable and the remainder barely so. Husband's testimony on this subject was supported by the testimony of the oldest daughter, who also described the adverse effect the condition of the house had on her social life and personality development.

The evidence also shows that in the 9 months after Wife had moved out of the house, pursuant to a preliminary order issued in this action, the house, except for Wife's bedroom, had been cleaned and kept clean and that the minor child, then age 10, had begun not only having friends visit but, for the first time in his life, having friends stay overnight.

Wife's Motion to Correct Errors was specifically directed to two issues: First, the awarding of custody to Husband; Second, the awarding of the real property, which she claims is "ancestral property" to Husband. Although Wife's brief attempts to raise other issues (e.g., the sufficiency of the total property settlement-alimony

award) those issues must be considered waived for failure to raise them in her motion to correct errors, TR. 59(G); *Buckley* v. *State* (1975), 163 Ind. App. 113, 322 N.E.2d 113, 115, n. 4.

The rule in Indiana for determining custody of children and for review of such judgments is quoted in *Watkins* v. *Watkins* (1943), 221 Ind. 293, 298, 47 N.E.2d 606:

> " 'The welfare of the child is paramount to the claims of either parent, and its care and custody should be awarded with regard to the best interests of the child. The trial judge is in a position to see the parties, to observe their conduct and demeanor, and to hear them testify, and his decision ought not be reversed unless an abuse of discretion has been shown.' *Cornwell* v. *Cornwell* (1940), 108 Ind. App. 350, 354, 29 N.E.2d 317, 318."

Enough has been said in reciting the evidence most favorable to Husband to demonstrate that there is ample evidence to sustain the custody decision and thus that no abuse of discretion has been shown.

In this court Wife argues that the real estate is ancestral property that had been in her family for two generations, that her interest in and attachment to the property was based on more than economic value, and that therefore the property should have been awarded to her. However, that position is not supported by the evidence presented to the trial court.

The record shows that Wife's "interest" in the property was mentioned twice. The first time she stated that it had belonged to her parents and that she had lived there since about age 11. The second mention is contained in its entirety in the following dialogue between Wife and her attorney during direct examination:

> "Q. Now are you also asking for occupancy or some arrangement whereby you'd be able to live in this house?
> "A. Yes sir. I want to live in the house so [the minor child] can keep—continue going to the school that he's going to because he would like to."

Thus all the evidence clearly establishes is that Wife's parents first moved into the house, apparently having just purchased it, when Wife was 11, and that she lived there for approximately 7 years, at which time she married and moved to Tennessee to live with Husband, and that Wife's interest in the house was centered upon that house being the residence of the minor child. While the evidence might support an inference that Wife's emotional attachment to the property was slightly greater than that of the average wife, the evidence of her treatment of that property would equally well support an inference that her emotional attachment was a good deal less than average.

The evidence also shows that the mortgage payment was $130.00 per month, that Wife was at the time making a monthly payment of $59.00 for her car and that Wife planned to continue babysitting as an occupation. Under such circumstances it is doubtful that Wife could long maintain the property even assuming that Husband (whom the trial court found to be the innocent party) was not awarded any money settlement for his interest in that property.

As was said in *Boshonig* v. *Boshonig* (1971), 148 Ind. App. 496, 499, 267 N.E.2d 555, 556:

> "We will not weigh the evidence, but will consider it in a light most favorable to the appellee. The decision of the trial court, relative to property rights, alimony, and other allowances are reviewable for a determination of an abuse of judicial discretion, and for that purpose only. The judicial discretion in a case of this nature is an exercise of official conscience, not arbitrarily, willfully, or passionately exercised, but based upon the facts and circumstances of the particular case with regard to what is right and equitable under the applicable law and to the end of a just result. The appellant's responsibility is to show a clear abuse of judicial discretion. *Buckner* v. *Buckner* (1958), 128 Ind. App. 654, 152 N.E.2d 97; *Tomchany* v. *Tomchany* (1962), 134 Ind. App. 27, 185 N.E.2d 301; *Chaleff* v. *Chaleff* (1969), [144] Ind. App. [438], 246 N.E.2d 768. The fact that circumstances would have justified a different result by

another trial court than that reached by the trial court in this case does not warrant this court in substituting its judgment for that of this trial court. *Buckner* v. *Buckner, supra.*"

Wife has not discharged her burden of showing a clear abuse of judicial discretion.

Although the underlying facts in *Miller* v. *Miller* (1970), 146 Ind. App. 455, 464, 256 N.E.2d 589, 594, are different from those in the case at bar, the concluding summary made therein is appropriate here:

"However, considering all the evidence in this cause we have before us facts to draw such inferences in favor of the appellee so that there is no question that the custody of the children should be in the hands of the appellee, and in so placing them there we are of the opinion that the trial court did not abuse his discretion in the division of the property, as it was necessary for the appellee to have a home for the children where he could and did care for them. In our opinion, there is sufficient evidence for the trial court to grant appellee the divorce, custody of the children, and to make the disposition of real estate as was done."

The Judgment is

Affirmed.

Sullivan, P.J., and Buchanan, J., concur.

Note.—Reported at 335 N.E.2d 245.